UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ANDREW B. INDAHL,

    Plaintiff,

v.                        CIVIL ACTION NO:  1:18-cv-00540 KBM-KRS

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A. a NEW MEXICO
PROFESSIONAL ASSOCIATION,

    Defendant.

### FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Andrew B. Indahl, through his counsel of record, MOODY & STANFORD, P.C. (Christopher M. Moody and Repps D. Stanford), and, pursuant to Fed.R.Civ.P. 15(a)(1)(B), hereby submits his First Amended Complaint against Defendant Modrall, Sperling, Roehl, Harris & Sisk, P.A. (hereinafter "Modrall Law Firm") as follows:

### PARTIES AND VENUE

1. At all times material hereto until the termination of his employment effective April 27, 2018 Plaintiff Indahl, an individual who resides in Bernalillo County, New Mexico, was employed by Defendant Modrall Law Firm as an associate attorney.

2. Defendant Modrall Law Firm is a New Mexico professional association engaged in the practice of law with offices in Albuquerque and Santa Fe, New Mexico.

3. The Modrall Law Firm resides in Santa Fe County and venue is appropriate in this Court pursuant to NMSA 1978 §38-3-1 (A) (2015). Venue is also appropriate pursuant to NMSA 1978 §28-1-13(A) in that Defendant does business in Santa Fe County.

### GENERAL ALLEGATIONS

4. Plaintiff Indahl was hired by the Modrall Law Firm as an associate attorney in approximately April 2012.

5. During his employment, Plaintiff Indahl met all objective requirements of his employment, received positive performance evaluations and received regular compensation increases. Indahl consistently performed up to the expectations of the Modrall Law Firm and his work consistently brought in at least three times his salary to the Modrall Law Firm.

6. During his employment until at least late 2017, Plaintiff had no disciplinary issues and was never formally counseled regarding his performance or behavior.

7. In 2014 Plaintiff Indahl's wife, Anna Indahl, who was also an associate attorney at the Modrall Law Firm, took maternity leave.

8. When she returned from leave three shareholders at the Modrall Law Firm with supervisory responsibility over Ms. Indahl made it difficult for her to resume her professional activities by, among other things, refusing to reintegrate her into litigation matters that she had been involved in prior to her leave and spreading false rumors around the law firm that Ms. Indahl was not interested in marketing events and was unfocused in order to damage her reputation and career.

9. One or more shareholders in the Modrall Law Firm then unfairly criticized Ms. Indahl's job performance, claiming that she was having trouble developing work following her return to work from maternity leave and lacked "focus" on her legal practice and included those criticisms on her performance evaluation.

10. Over the next several years three shareholders at the Modrall Law Firm with supervisory responsibility over Ms. Indahl took numerous actions against her designed to sabotage her position at the firm and to force her out of the firm, all on account of Ms. Indahl's maternity leave in 2014 and her status as a new mother.

11. Plaintiff Indahl stood up for his wife and asserted that those criticizing his wife were engaging in discriminatory conduct. Specifically, Indahl informed one or more Modrall Law Firm attorneys, including a member of the firm's Executive Committee as provided for in the firm's employee handbook, that he knew they were creating a hostile work environment for his wife, were attempting to sabotage his wife's career and run her out of the Modrall Law Firm based

on their false allegation that she was more focused on her child than on her work and that he was not going to allow that to happen. Plaintiff believed that his wife was subjected to this adverse treatment because of her sex. The mistreatment of Ms. Indahl was so severe that she requested to move out of her office from the seventh floor to the sixth floor to get away from one of the shareholders who was mistreating her.

12. Indahl was informed that if his wife did not like how she was being treated, she would be cut out of the employment section's work and could leave the firm and that she would not be included in any more marketing efforts.

13. The next day the chair of the associates committee said that Plaintiff's efforts in support of his wife were inappropriate and jeopardized his career at the Modrall Law Firm.

14. In 2016 Plaintiff Indahl reported the retaliation and underlying hostile work environment in writing to a member of the Executive Committee as he was required to by the firm's employee handbook, but upon information and belief nothing was done about his report.

15. One or more shareholders in the Modrall Law Firm stated that due to Plaintiff's opposition to the adverse treatment of his wife guaranteed that he would never be a shareholder in the Modrall Law Firm.

16. Plaintiff subsequently received adverse performance evaluations that included one or more objectively false statements and concluded that Plaintiff had trouble working with shareholders. Upon receiving this retaliatory evaluation, Plaintiff immediately discussed it with the shareholder who had given it to him. The shareholder admitted that the information in the evaluation was false, but on information and belief the evaluation was never corrected.

17. Following this, Plaintiff was awarded bonuses that were lower than his performance warranted and, on information and belief, were lower than those awarded to other attorneys with lower levels of performance.

18. Plaintiff completed a self-evaluation of his performance that was critical of the Modrall Law Firm's treatment of him, which treatment was in response to his opposition to the

adverse treatment of his wife on the basis of her sex. That self-evaluation was shared with the shareholders of the Modrall Law Firm.

19. In 2017 Plaintiff was eligible for election to shareholder. In about May 2017 the Modrall Law Firm later conducted a "straw poll" of Plaintiff's candidacy for shareholder, which indicated that a number of shareholders had concerns about Plaintiff's self-evaluation due to its criticism of the Modrall Law Firm's treatment of him. Plaintiff spoke with the shareholders who indicated they had concerns about him and addressed those concerns. On information and belief those shareholders ultimately voted in favor of Plaintiff's candidacy for shareholder.

20. One week before the shareholder vote, Plaintiff advised the firm president and the chair of the associate's committee that he anticipated that three shareholders would vote against him for illegal retaliatory reasons. Upon information and belief, nothing was done in response to that report and those three shareholders were permitted to cast their votes against Plaintiff.

21. In October 2017 the Modrall Law Firm scheduled and conducted a vote on the candidacy of Plaintiff and others for shareholder in the firm. Plaintiff was not elected shareholder. The adverse votes of three shareholders who were involved in the adverse treatment of Plaintiff's wife and who Plaintiff had called out for their discriminatory conduct made the difference and resulted in Plaintiff's candidacy for shareholder being rejected.

22. Following the vote, Plaintiff advised the Modrall Law Firm's General Counsel that he had previously complained about adverse treatment of his wife due to her maternity leave and that he believed those complaints resulted in adverse votes against his candidacy by at least three shareholders, which was a sufficient number to doom Plaintiff's candidacy. To Plaintiff's knowledge, the General Counsel did nothing in response to this information.

23. Plaintiff's wife then shared with the General Counsel of the firm information about the hostile work environment she was subjected to and the retaliation Plaintiff suffered and the General Counsel reacted with hostility. Upon information and belief, no action was taken in response to this report to the General Counsel.

24. In late November or early December 2017 Indahl attempted to start a conversation with the heads of the Modrall Law Firm's employment section, its General Counsel, and its President about what he believed to be discrimination and retaliation at the Modrall Law Firm. The Modrall Law Firm had no policies regarding retaliation by shareholders or how to handle a shareholder vote after allegations of retaliation are brought against a shareholder and Plaintiff was hoping to help the firm establish such policies, making it possible for him to be considered and elected shareholder the following year by properly excluding the retaliatory votes that had been cast against him.

25. Plaintiff's efforts to engage the Modrall Law Firm on its culture of discrimination and retaliation was initially rebuffed.

26. Later, Plaintiff was informed by the Modrall Law firm that it had engaged an attorney not employed by the Modrall Law Firm to investigate Plaintiff's allegations.

27. Over approximately the next week Plaintiff cooperated with the attorney conducting the investigation and submitted to an interview. The attorney conducting the investigation appeared to be uninterested in the key facts relating to Plaintiff's allegations, appeared not to be taking notes during much of the interview and falsely accused Plaintiff of making threats during the interview. Due to this, Plaintiff specifically requested and participated in a second interview.

28. Around this time one or more emails relating to Plaintiff's allegations disappeared from his email box. Plaintiff asked Modrall Law Firm numerous times to put an "audit log" on his email account in an attempt to determine whether someone was accessing his account and, if so, who. His requests were refused.

29. In early January 2018 the Modrall Law Firm's General Counsel contacted Plaintiff's wife and informed her that Plaintiff's allegations were going to be discussed at an upcoming shareholders' meeting and that she would be excluded from the portion of the meeting where the allegations were discussed.

30. Plaintiff then contacted the General Counsel and discussed the status of his allegations. During the call the General Counsel conceded that Plaintiff could "probably patch together a case" but when asked what action the Modrall Law Firm intended to take in response to the allegations was noncommittal.

31. Following this, Plaintiff informed various shareholders at the Modrall Law Firm that he intended to file a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff caused his first charge of employment discrimination to be filed with EEOC on or about January 11, 2018. The charge alleged that conduct of the Modrall Law Firm violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the New Mexico Human Rights Act, NMSA 1978 § 28-1-1 *et seq.* Pursuant to a work sharing agreement between EEOC and the New Mexico Department of Workforce Solutions, Plaintiff's charge was cross-filed with the New Mexico Human Rights Bureau.

32. Plaintiff also informed the General Counsel that the Modrall Law Firm's plan to discuss his allegations of retaliation with all the shareholders would likely expose him to further reprisals and constituted a further act of retaliation.

33. When Plaintiff received no response to this latter email, he informed the General Counsel that under the circumstances he intended to speak with Modrall Law Firm shareholders regarding his allegations as a defensive measure and to seek redress for the retaliation he had already suffered. The General Counsel responded forbidding Plaintiff from communicating with anyone at the Modrall Law Firm about his allegations.

34. The General Counsel informed Plaintiff that it had been decided not to discuss his allegations with all the shareholders at the shareholder meeting.

35. Immediately after this, on January 12, 2018, the day after Plaintiff filed his first employment discrimination charge, the Modrall Law Firm emailed Plaintiff, and on information and belief all other firm personnel, stating that Plaintiff was not permitted in the building where its Albuquerque offices are located. No reason was given.

36.     Plaintiff responded to this with an email inquiring into the reason he was barred from the building and informing the Modrall Law Firm that this action was retaliatory. The Modrall Law Firm's General Counsel responded by email, refusing to state any specific basis for the action and stating that he stood by his previous email.

37.     A few days later, Plaintiff spoke with the General Counsel on the phone and repeatedly asked why he had been barred from the building. The General Counsel never provided a reason, other than pointing to Plaintiff's emails to various Modrall Law Firm shareholders. During the call the General Counsel never claimed that Plaintiff represented a safety threat or that Plaintiff had threatened anyone and expressly denied any belief that Plaintiff was crazy or dangerous, when asked what indication Plaintiff had given that he presented a security threat, the General Counsel failed to provide any evidence and indeed stated that Plaintiff sounded "perfectly rational."

38.     During the call between Plaintiff and the General Counsel, the General Counsel even falsely accused Plaintiff of using threatening language during the call, a false charge that Plaintiff immediately denied.

39.     None of Plaintiff's emails to Modrall Law Firm shareholders ever threatened violence and Plaintiff never verbally threatened violence.

40.     After Plaintiff was barred from the office he received few work assignments despite his efforts to ask for work from various Modrall Law Firm shareholders.

41.     Plaintiff repeatedly requested that he be allowed to return to work in the office, but his request was denied.

42.     Instead, the Modrall Law Firm demanded that Plaintiff resolve his dispute with the Modrall Law Firm in a range the firm dictated and which also included him leaving the firm's employ or face discharge on trumped up and false allegations of misconduct, which the Modrall Law Firm knew would be devastating to Plaintiff's career prospects.

43.     Plaintiff protested this adverse treatment and on April 15, 2018 provided the Modrall Law Firm with his second employment discrimination charge, which alleged that conduct

of the Modrall Law Firm violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and the New Mexico Human Rights Act, NMSA 1978 § 28-1-1.

44. Plaintiff filed his second charge with EEOC the following day and pursuant to a work sharing agreement between EEOC and the New Mexico Department of Workforce Solutions, the charge was cross filed with the New Mexico Human Rights Bureau.

45. The Modrall Law Firm expressed hostility to the contents of Plaintiff's second employment discrimination charge.

46. A few days later, on April 24, 2018 the Modrall Law Firm emailed Plaintiff a letter terminating his employment effective April 27, 2018 for undisclosed "misconduct."

47. Plaintiff promptly filed his third charge of discrimination with EEOC alleging that his termination was in retaliation for protected activity, including his opposition to conduct constituting sex discrimination and his action in filing his latest EEOC charge, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and the New Mexico Human Rights Act, NMSA 1978 § 28-1-1.

48. Pursuant to a work sharing agreement between EEOC and the New Mexico Department of Workforce Solutions, Plaintiff's third EEOC charge was cross filed with the New Mexico Human Rights Bureau.

**COUNT I    RETALIATORY DISCHARGE**

49. Plaintiff incorporates by reference paragraphs 1 – 48 of his First Amended Complaint.

50. The Modrall Law Firm engaged in conduct toward Plaintiff's wife that Plaintiff believed constituted discrimination on the basis of sex.

51. On numerous occasions Plaintiff expressed his opposition to the adverse treatment of his wife on the basis of her sex.

52. On numerous occasions Plaintiff informed Modrall Law Firm shareholders that the firm's conduct toward his wife constituted sex discrimination.

53. When the Modrall Law Firm took adverse actions against Plaintiff because of his opposition to the discriminatory treatment of his wife he informed the firm that he intended to file, and he did file, a charge of discrimination with EEOC, which was cross-filed with the New Mexico Human Rights Bureau.

54. In retaliation for Plaintiff's filing of his first employment discrimination charge, the Modrall Law Firm took additional adverse actions against Plaintiff, including by barring him from the firm's offices and insisting that he settle his claims against the Modrall Law Firm on terms favorable to the firm and leave the firm or face termination for false allegations of misconduct.

55. In response to those adverse actions, Plaintiff filed his second charge of discrimination

56. Within a few days, the Modrall Law Firm communicated its hostility and objection to the contents of Plaintiff's second employment discrimination charge. Specifically, the Modrall Law Firm alleged that actions taken by Plaintiff to document and oppose the retaliation against him had been dishonest and unethical. The Modrall Law Firm then fired Plaintiff on trumped up charges of misconduct.

57. It is the public policy of New Mexico that employers are prohibited from engaging in acts of discrimination against employees on the basis of sex. It is also the public policy of New Mexico that employers are prohibited from making threats and engaging in reprisals or discrimination against an employee who has opposed any unlawful discriminatory practice or who has filed a charge or participated in any investigation into discriminatory employment practices.

58. That public policy is expressed in legislative acts such as the New Mexico Human Rights Act and the Albuquerque Human Rights Ordinance and in decisions of the New Mexico Supreme Court such as *Gandy v. Wal-Mart Stores, Inc.*, 1994-NMSC-040, 117 N.M. 441, 872 P. 2d 859.

59. By opposing what he perceived to be the Modrall Law Firm's discriminatory and retaliatory acts, by participating in an investigation into the Modrall Law Firm's discriminatory

and retaliatory practices and by filing charges of employment discrimination Plaintiff engaged in conduct encouraged by the public policy of New Mexico.

60. It is also the public policy of New Mexico that a person is prohibited from communicating a threat to obtain anything of value. This public policy is expressed in New Mexico statutes, specifically Section 30-16-9.

61. The Modrall Law Firm threatened to terminate Plaintiff for misconduct--a false charge that the Modrall Law Firm knew was baseless and would be harmful to Plaintiff's professional reputation and career--to obtain something of value to it, a settlement of Plaintiff's claims on terms that it dictated,

62. Plaintiff opposed this conduct by the Modrall Law Firm and by doing so engaged in conduct encouraged by New Mexico public policy.

63. The Modrall Law Firm discharged Plaintiff's employment in retaliation for Plaintiff's conduct described above.

64. As a result of his discharge, Plaintiff has sustained damages in the form of lost salary and benefits.

65. Plaintiff's discharge for alleged misconduct has damaged and will continue to damage his professional reputation, will make it difficult for him to find alternative employment in the legal field and will depress his earnings in the future.

66. Plaintiff's discharge has also caused damage to Plaintiff in the form of emotional distress, mental anguish, humiliation and embarrassment.

67. The Modrall Law Firm's discharge of Plaintiff was intentional, willful, wanton, malicious, and in bad faith and Plaintiff is, therefore, entitled to punitive damages.

### COUNT II    BREACH OF CONTRACT

68. Plaintiff incorporates by reference paragraphs 1 – 67 of his First Amended Complaint.

69. Throughout the period of Plaintiff's employment with the Modrall Law Firm, the firm had settled policies and/or practices that governed eligibility of an associate to become a candidate for shareholder. The Modrall Law Firm had express years of practice with the firm, work hours requirements, and revenue production requirements, and otherwise required that a successful candidate have performed work of an acceptable legal quality.

70. Those policies and/or practices were sufficiently specific that the Modrall Law Firm was bound to follow them. In fact, the standards were so specific that prior to accepting employment with the firm, Plaintiff negotiated two years of credit toward the seven years of practice with the firm requirement based on his extensive prior legal experience.

71. Plaintiff was informed of the contents of the policies governing elevation to shareholder and he accepted employment and continued his employment with the Modrall Law Firm in reliance on those policies.

72. During his employment with the Modrall Law Firm, Plaintiff worked to meet the work-related criteria that the firm had established for elevation to shareholder.

73. During his employment with the Modrall Law Firm, Plaintiff received regular performance evaluations. Those evaluations were all at least satisfactory and in nearly all cases indicated that his work was excellent and that Plaintiff that he was on track to be made a shareholder in the Modrall Law Firm.

74. The Modrall Law Firm's policy and practice was to give associates a "hard look" at the three and five-year marks to indicate whether the associate was on track for elevation to shareholder. At both the three and five-year marks Plaintiff was informed that his progress was acceptable and he was given the go ahead to seek elevation to shareholder.

75. The Modrall Law Firm's policies and practices setting forth the criteria that a successful candidate for shareholder had to meet were an implied in fact contract.

76. In the alternative, the Modrall Law Firm's policies setting forth the criteria that a successful candidate for shareholder had to meet were an offer which Plaintiff was entitled to accept by meeting those criteria.

77. Plaintiff satisfied all of the criteria for shareholder established by the Modrall Law Firm, thus accepting the Modrall Law Firm's offer of shareholder if he met those criteria.

78. Despite the fact that Plaintiff satisfied all of the criteria to become a shareholder established by the Modrall Law Firm, his candidacy for shareholder was rejected. Of the five votes cast against Plaintiff, three were by shareholders who had never worked with him and therefore had no objective basis to evaluate his performance. Of those three, Plaintiff had alleged unlawful retaliation by two. One of the remaining votes was cast by a shareholder whose only evaluation of Plaintiff reflected her judgment that his work for her had been excellent. The remaining vote was cast by a shareholder who had been instructed by the Modrall Law Firm's General Counsel to stop supervising Plaintiff out of concern for her objectivity in evaluating him after he alleged retaliation by her for his protected activities on behalf of Ms. Indahl.

79. Plaintiff was informed by one or more shareholders in the Modrall Law Firm that a factor other than the criteria established in its policies and/or practices jeopardized his career at the firm and/or meant that he would never be a shareholder of the firm.

80. The Modrall Law Firm's rejection of Plaintiff for shareholder despite his satisfaction of all criteria established by the firm breached a legally enforceable contract.

81. Plaintiff has sustained damages as a result of the Modrall Law Firm's breach of the agreement. His earning capacity over his professional life is substantially less than it would be as a shareholder at the Modrall Law firm.

82. Shareholders in a number sufficient to block Plaintiff from being elected a shareholder in the Modrall Law Firm consciously voted against Plaintiff's candidacy based on factors other than the criteria established by the Modrall Law Firm for elevation to shareholder.

83. The Modrall Law Firm's breach of contract was therefore deliberate, intentional, willful, wanton and malicious and Plaintiff is entitled to punitive damages for the breach.

### COUNT III  APPEAL OF DISMISSAL OF HUMAN RIGHTS CHARGES
### (VIOLATION OF NEW MEXICO HUMAN RIGHTS ACT)

84. Plaintiff incorporates by reference paragraphs 1 – 83 of his First Amended Complaint.

85. Plaintiff has satisfied all procedural prerequisites to suit. Pursuant to NMSA 1978 § 28-1-13(A), this appeal is timely filed within ninety (90) days of Plaintiff's receipt of orders of dismissal of his employment discrimination charges.

86. By the conduct alleged above Defendant subjected Plaintiff to threats, reprisal and discrimination because he opposed unlawful discriminatory practices and because he filed one or more complaints under the New Mexico Human Rights Act. Defendant's conduct therefore violated NMSA 1978 § 28-1-7(I)(2).

87. Defendant's threats, reprisal and discrimination against Plaintiff, including but not limited to Defendant's refusal to elevate Plaintiff to shareholder status, its action barring Plaintiff from the office, cutting Plaintiff off from work, and its discharge of Plaintiff, have caused damage to Plaintiff in the form of emotional distress, mental anguish, humiliation and embarrassment.

88. Defendant's threats, reprisal and discrimination against Plaintiff, including but not limited to Defendant's refusal to elevate Plaintiff to shareholder status, its action barring Plaintiff from the office, cutting Plaintiff off from work, and its discharge of Plaintiff, have damaged and will continue to damage Plaintiff's professional reputation, will make it difficult for him to find alternative employment in the legal field and will depress his earnings in the future.

89. Plaintiff has sustained lost income as a result of Defendant's refusal to elevate him to shareholder status and its subsequent discharge of Plaintiff. Plaintiff's earning capacity over his professional life is substantially less than it would be as a shareholder at the Modrall Law firm.

90. Plaintiff has retained the services of an attorney to prosecute this claim and will therefore incur attorney fees and costs.

**WHEREFORE**, Plaintiff prays for the following relief on his claims:

    A.    Lost compensation and benefits resulting from his discharge in amounts to be proven;

    B.    Lost compensation resulting from the wrongful denial of shareholder status;

    C.    Non-pecuniary damages for emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment, and damage to professional reputation of life in an amount to be determined by the jury;

    D.    Pecuniary losses incurred by Plaintiffs in searching for alternate employment;

    E.    Punitive damages in an amount to be determined by the jury;

    F.    Pre- and post-judgment interest as provided by law;

    G.    Reasonable attorney fees and costs; and

    H.    Such other relief as the Court deems just and proper.

## Jury Demand

Plaintiff demands trial by jury on all claims so triable.

Respectfully submitted,

**MOODY & STANFORD, P.C.**

By: */s/ Christopher M. Moody 2018.06.27*
      Christopher M. Moody
      Repps D. Stanford
4619 Montgomery Blvd. NE
Albuquerque, New Mexico 87109
(505) 944-0033
moody@nmlaborlaw.com
stanford@nmlaborlaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

We hereby certify that we have served
a true and correct copy of the foregoing
pleading by filing the same in the CM/ECF system
on the following counsel of record this 27th day of
June, 2018:

STELZNER, WINTER, WARBURTON,
FLORES, SANCHEZ & DAWES, P.A.
Sara N. Sanchez
Rebekah A. Gallegos
302 Eighth Street NW, Suite 200
Albuquerque, NM  87103
(505) 938-7770
*Attorneys for Defendants*

MOODY & STANFORD, P.C.

By:  *Christopher M. Moody 2018.06.27*